# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES M. SWEENEY and<br>INTERNATIONAL UNION OF<br>OPERATING ENGINEERS, LOCAL 150,<br>AFL-CIO,<br><br>     Plaintiffs,<br><br>     v.<br><br>LISA M. MADIGAN, in her official capacity as<br>Attorney General for the State of Illinois, and<br>KIMBERLY STEVENS, in her official capacity<br>as Executive Director of the Illinois Labor<br>Relations Board,<br><br>     Defendants. | Case No. 18-cv-1362<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

The plaintiffs, James M. Sweeney and the International Union of Operating Engineers, Local 150, AFL-CIO, bring this action against Attorney General of Illinois Lisa Madigan and Executive Director of the Illinois Labor Relations Board Kimberly Stevens, alleging that a portion of the Illinois Public Labor Relations Act violates their First and Fifth Amendment rights in light of the Supreme Court's ruling in *Janus v. American Federation of State, County, and Municipal Employees*, ___ U.S. ___, 138 S.Ct. 2448, 201 L.E.2d 924 (2018). The defendants now move to dismiss the plaintiffs' claims for lack of subject matter jurisdiction. For the reasons set forth herein, that motion [31] is granted in part and denied in part.

**Background**

The Illinois Public Labor Relations Act is a set of administrative laws under which the Illinois Labor Relations Board regulates labor relations between public employers and employees,

1

including collective bargaining. Under the IPLRA, a labor union may become the "exclusive representative" for the employees of a particular bargaining unit for purposes of collective bargaining. 5 ILCS 315/6(c). In exchange for conferring this exclusivity, the IPLRA requires that exclusive representatives must represent all public employees in a bargaining unit, including those who are not union members. 5 ILCS 315/6(d). To offset this burden, IPLRA allowed a labor union that is an exclusive representative to charge non-member bargaining unit employees agency fees, commonly described as "fair share" fees, to compensate for activities germane to the collective bargaining process. 5 ILCS 315/6(e). The sole exception to this requirement is in the case of non-members whose refusal to pay union dues is based on bona fide religious tenants, in which case the IPLRA provides for alternative payments to agreed upon charitable organizations. 5 ILCS 315/6(g). The IPLRA also defines what constitutes an unfair labor practice and imposes restrictions on the scope of matters subject to collective bargaining. 5 ILCS 315/10(b)(1)(i); 5 ILCS 315/4.

Past Supreme Court precedent permitted the imposition of agency fees such as those permitted under Illinois law. *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). *Janus*, however, overturned that precedent, holding that the imposition of agency fees did not satisfy the exacting scrutiny standard. In the wake of *Janus*, the plaintiffs assert that they will be required to represent non-members who refuse to compensate the Union for its representation. The plaintiffs seek declaratory judgment that the sections of the ILPRA requiring them to represent non-members without compensation violate the First Amendment, that the requirements that they represent non-members in the absence of a fair share agreement and those non-members with religious objections to paying the fair share fee violates the First and Fifth Amendments, and that the limits on the scope of collective bargaining violates their First Amendment rights.

**Legal Standard**

A Rule 12(b)(1) motion seeks dismissal of an action over which a court allegedly lacks subject-matter jurisdiction.

> While it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution, we accept as true all of the allegations contained in a complaint.... Likewise, subject-matter jurisdiction must be secure at all times, regardless of whether the parties raise the issue, and no matter how much has been invested in a case.

*Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 853 (7th Cir. 2012) (internal citations omitted). In order to determine whether subject matter jurisdiction in fact exists, this Court may properly look beyond the allegations in the complaint and consider whatever evidence has been submitted on the issue. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *see also Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

**Discussion**

Under Article III of the United States Constitution, federal courts cannot render advisory opinions where a case or controversy does not yet exist. *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). A case is not ripe for resolution when it is based on hypothetical, speculative, or illusory disputes as opposed to actual and concrete conflicts. *Id.* The rationale of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In assessing whether a case is ripe for adjudication, the Court considers the fitness of the issues for judicial decision and the hardship to the parties of withholding

3

judicial consideration. *Texas v. United States*, 523 U.S. 296, 300–01, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

The defendants appear to contend that the plaintiffs' claims are not ripe because there is no allegation that the Union plans to engage in conduct that would trigger the filing of an unfair labor practice claim against it for violating the duty of fair representation and no indication how the state Labor Board or subsequent reviewing courts would rule on such a claim. It is well-established, however, that challenges to unconstitutional regulations are ripe for challenge prior to their enforcement when the injury in question is certainly impending. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923)).

In a somewhat similar vein, in order to have standing to sue a plaintiff must be able to show (1) that she has suffered an "injury in fact" that is both concrete and particularized and actual or imminent, (2) that the injury is fairly traceable to the challenged action, and (3) that the injury is likely and not just speculative that a favorable decision will redress the injury. *Sierra Club v. Franklin County Power of Illinois, LLC,* 546 F.3d 918, 925 (7th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Here, the plaintiffs primarily contend that, as a result of *Janus*, the agency fee incorporated into the IPLRA will no longer be enforceable. Because the remainder of that statute, including the duty to provide fair representation to non-members, remains enforceable, the plaintiffs assert that they, and therefore their membership, will be compelled to speak on behalf of non-members, infringing on their First Amendment rights.[1] Indeed, the provisions of the IPLRA in question expressly require such speech and expressly limit the plaintiffs' ability to receive reimbursement for

---

[1] The defendants briefly note that *Janus* discussed the relationship between fair share fees and the duty to provide fair representation to all bargaining unit members. Although such an argument would be relevant to the merits of the plaintiffs' claims, the defendants' conclusory aside is not sufficient to place that portion of *Janus* at issue in the present ruling.

4

that speech to the fair share payments that the Supreme Court ruled unconstitutional in *Janus*. The plaintiffs' alleged injury is accordingly far from speculative. Although the defendants claim that any injury is hypothetical at this juncture, they argue that the duty of fair representation of non-members remains binding upon the plaintiffs, and thus effectively concede that prosecution would result if the plaintiffs ended their compliance with the statute. Although it may be true that nothing has changed except for the Supreme Court's decision in *Janus*, that decision altered the nature of the plaintiffs' preexisting statutory obligations and created the imminent constitutional injury alleged to exist here. This injury is sufficient to establish both that standing exists and that there is a dispute ripe for resolution with respect to the plaintiffs' claims arising directly from their duty of representation. *See Lujan*, 504 U.S. at 560–61; *Babbitt*, 442 U.S. at 298.

The plaintiffs, however, also challenge the limitations on the scope of collective bargaining that Illinois law imposes in light of Janus' supposed holding that all union speech is inherently political. The IPLRA provides that employers are required to bargain collectively about policy matters directly affecting wages, hours, and terms and conditions of employment, but not about "matters of inherent managerial policy," such as "the functions of the employer, standards of services, its overall budget, the organizational structure, and the selection of new employees." 5 ILCS 315/4. The plaintiffs contend that, in the wake of *Janus,* these restrictions are no longer constitutionally tenable because they impose a constraint on the scope of the plaintiffs' speech. This claim, unlike those previously discussed, is not ripe for pre-enforcement consideration. The plaintiffs' constitutional challenges to the duty of fair representation derive directly from undisputed changes to the operative statutory scheme that fundamentally alter the plaintiffs' operations. The present claim, by contrast, stems from dicta providing the plaintiffs with the opportunity to advance novel legal arguments and does not reflect changed factual circumstance. Accordingly, the Court does not believe that it is appropriately the subject of a pre-enforcement challenge.

5

The Court turns its attention to the arguments presented in the amicus curiae brief filed by Brian Trygg. Trygg argued that the claims based on the anticipated outcome of *Janus* are unripe because the plaintiff's allegations are hypothetical in nature. Because the operative complaint was filed before *Janus* was decided, it is true that the plaintiffs' allegations concerning *Janus* were speculative in nature, being based on the plaintiff's expectations as to the outcome of that case. When considering matters of jurisdiction, however, this Court may consider matters outside the pleadings. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). *Janus* has been decided and its resolution substantially comports with the plaintiffs' expectations. Accordingly, the plaintiffs' claims are no longer speculative, even if the phrasing of the complaint is outdated in that respect.[2]

Trygg also presents a compelling point as to the plaintiffs' claims that are premised on IPLRA sections 6(e) and 6(g) (counts III and IV). Section 6(e) provides that exclusive representatives and bargaining organizations may enter into fair share arrangements. Section 6(g) contains the religious exemption that allows non-member employees with religious objections to make their service fee payments to non-religious charitable organizations.

The plaintiffs allege that these provisions, which require it to provide services and representation without receiving compensation, violate the Fifth Amendment Takings Clause and First Amendment Freedom of Association. Sections 6(e) and 6(g), however, both concern the implementation and collection of agency fees. *Janus* expressly held such fees to be unconstitutional, abrogating the portions of the IPLRA giving rise to the plaintiffs' claims. *Janus* thus renders those claims moot, depriving the plaintiffs of standing to pursue them. *See Ciarpaglini v. Norwood*, 817 F.3d 541, 545 (7th Cir. 2016) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203,

---

[2] The Court appreciates the plaintiffs' zeal to pursue this case. Such enthusiasm, however, does not excuse the fact that, by rushing to file their complaint before *Janus* was decided, the plaintiffs have presented this Court with an ambiguous complaint and have made no effort to subsequently narrow it in light of the Supreme Court's ruling. The Court encourages the plaintiffs to seek leave to amend their complaint so that it may be brought up to date at the earliest opportunity.

89 S.Ct. 361, 21 L.Ed.2d 344 (1968)) (recognizing that a case becomes moot when subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur); *see also Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) (recognizing Supreme Court precedent establishing that the repeal, expiration, or amendment of challenged legislation ends the ongoing controversy and moots a plaintiff's claims). Although the plaintiffs' constitutional claims might be based on their duty of fair representation, that duty is not established by the provisions identified. Accordingly, the Court agrees with amicus curiae that Counts III and IV must be dismissed as moot considering the Supreme Court's holding in *Janus*.

As a final matter, the Court turns to the defendants' argument that the Attorney General is not a proper party to this case. The Eleventh Amendment generally bars actions in federal court against a state, state agencies, and state officials acting in their official capacities. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). Under the *Ex Parte Young* doctrine, however, a state official may be sued for prospective equitable relief based on ongoing violations of federal law. *Id.* (quoting *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997)). In order for such relief to be available, the state official must have "some connection" with the enforcement of the law or conduct being challenged. *Ex Parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The defendants assert that the Attorney General has no prosecutorial authority over the IPLRA, which is enforced by the Illinois Labor Relations Board. The Attorney General, however, is responsible for prosecuting violations of Illinois Labor Relations Board orders and for seeking injunctive relief in Illinois' courts on behalf of parties complaining of Labor Act violations. Although tangential to the enforcement role of the Illinois Labor Relations Board, the Court considers these powers sufficient to establish a connection to the enforcement of the IPLRA. The

7

Attorney General, moreover, appears to have conceded the plaintiffs' argument on this point by failing to offer any opposition to it in reply brief. Accordingly, the Court declines to dismiss the Attorney General from this action.

**Conclusion**

For the foregoing reasons, the defendants' motion to dismiss [31] is granted in part and denied in part. The Court dismisses Counts III and IV to the extent that they are premised on the provisions of 5 ILCS 315/6(e) and (g), and dismisses the plaintiffs' claims premised on the restrictions on collective bargaining imposed by 5 ILCS 315/4. The defendants' motion to dismiss is denied in all other respects.

Date: 2/6/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge