**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| James M. Sweeney and International Union of Operating Engineers Local 150, AFL-CIO, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-1362 |
| v. | ) ) | Judge: Sharon Johnson Coleman |
| Kwame Raoul, in his official capacity as Attorney General for the State of Illinois; and Kimberly Stevens, in her official capacity as Executive Director of the Illinois Labor Relations Board, | ) ) ) ) ) ) | Magistrate Judge: Young B. Kim |
| Defendants. | ) | |

**LOCAL 150's BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

**Introduction**

Anticipating the decision at which the Supreme Court ultimately arrived in *Janus v. AFSCME Council 31*, 585 U.S. ___, 138 S.Ct. 2448 (June 27, 2018), Plaintiffs James M. Sweeney ("Sweeney") and Local 150 of the International Union of Operating Engineers, AFL-CIO ("Local 150"), filed this lawsuit (Doc. #1). Local 150 alleged that if the Supreme Court ruled that "fair share" fees nonmembers of public employee unions were required to pay under Illinois law are unconstitutional, then the concomitant duty of Illinois public employee unions to represent nonmembers fairly in grievance-arbitration proceedings is likewise unconstitutional.

On February 6, 2019, this Court denied Defendants' Motion to Dismiss (Doc. #52). In its decision, the Court found that Local 150 had standing to bring its Complaint, and that its claims were ripe for review as facial challenges to the IPLRA. *Sweeney v. Madigan*, 359 F. Supp. 3d 585 (2019). As this Court explained (*id.* at 590):

Although it may be true that nothing has changed except for the Supreme Court's decision in *Janus*, that decision altered the nature of the plaintiffs' preexisting statutory obligations and created the imminent constitutional injury alleged to exist here. This injury is sufficient to establish both that standing exists and that there is a dispute ripe for resolution with respect to the plaintiffs' claims arising directly from their duty of representation.

On April 19, 2019, this Court ordered the parties to file cross-motions for summary judgment (Doc. #65). For the reasons stated below, Local 150 is entitled to summary judgment in its favor and against the State Defendants.

**Statement of Facts**

A.       **Public Sector Collective Bargaining in Illinois**

In *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the Supreme Court ruled that unions representing public employees could constitutionally assess nonmembers an "agency fee" for representing them in collective bargaining. *Janus*, 138 S.Ct. at 2460-2461. While unions could not require nonmembers to support political causes with which they disagreed, the First Amendment did not bar compelled payments of fees to be used in support of collective bargaining, contract-administration, and enforcement. *Id.*

In the wake of *Abood*, many states including Illinois began to consider legislation that would regulate labor relations and collective bargaining in the public sector. According to one contemporary commentary,[1] in 1984, "Illinois granted public employees legally protected bargaining rights through the enactment of the Illinois Public Labor Relations Act (IPLRA) and the Illinois Educational Labor Relations Act (IELRA)." *Whiteside*, *supra* at 883. In so doing, the authors observe "the legislature…expressly stated that it intended to follow the National Labor Relations Act (NLRA) to the extent feasible." *Id.*

---

[1] S. Whiteside, *et al.*, "Illinois Public Labor Relations Laws: A Commentary and Analysis," 60 *CHICAGO-KENT LAW REVIEW* 883 (Art. 6, October 1984).

The Illinois legislature did this in several ways. It adopted the "majority rule" model of the NLRA which provided for employer recognition of an exclusive bargaining representative by virtue of a state labor board-conducted secret-ballot election, or by voluntary recognition of a representative of a majority of its employees. *Whiteside*, *supra* at 892-896; currently cited as 5 ILCS 315/6(c). It also adopted a "duty of fair representation" provision which "reflects judicial rulings in fair representation cases in the private sector." *Whiteside*, *supra* at 923; 5 ILCS 315/6(d). And the legislature authorized public employers and exclusive representatives "to negotiate for a provision…requiring 'fair share' payments from non-union members." *Whiteside*, *supra* at 924; 5 ILCS 315/6(e). As this Court observed in its previous decision in *Sweeney v. Madigan*, 359 F. Supp. 3d 585, 588 (2019):

> In exchange for conferring this exclusivity, the IPLRA requires that exclusive representatives must represent all public employees in a bargaining unit, including those who are not union members. 5 ILCS 315/6(d). To offset this burden, IPLRA allowed a labor union that is an exclusive representative to charge non-member bargaining unit employees agency fees, commonly described as "fair share" fees, to compensate for activities germane to the collective bargaining process. 5 ILCS 315/6(e).

As the commentators point out, "it was the legislature's expressed intention that the fair share provisions in both Acts comport with existing judicial precedent" and in express reliance upon *Abood*. *Whiteside*, *supra* at 924 and fn. 264.

## B.   Local 150's Representation of Public Employees

Plaintiff Local 150 of the International Union of Operating Engineers, AFL-CIO ("Local 150" or the "Union"), is a labor organization and unincorporated association with its primary office in Countryside, Illinois (Local 150's Statement of Uncontested Material Facts, ("Facts") ¶ 1). Local 150 represents over 23,000 members, over 3,000 of whom are employees covered by the Illinois Public Labor Relations Act (IPLRA), 5 ILCS 315/1, *et seq.* (*id.*). Plaintiff James M.

Sweeney is the President-Business Manager of Local 150 and a member of the Union (Facts ¶ 2).

In about 1989-1990, Local 150 began organizing public employees outside the City of Chicago (Facts ¶ 9). It was the Union's experience that as communities in the Chicago suburbs and elsewhere in Illinois matured, they began to self-perform maintenance of roads, sewer and water systems, and a variety of other tasks which involved the operation of heavy construction equipment (*id.*). Since 1989, Local 150 has organized and represented employees in the public works, sewer and water, and other departments in municipalities throughout northern Illinois and northwest Indiana (Facts ¶ 10). Local 150 currently represents approximately 3,300 employees in about 133 bargaining units of public employees employed by municipalities and other units of local government (*id.*).

Local 150 employs nine staff members in the Union's Public Sector Department to represent public employees (Facts ¶ 11). That Department consists of three attorneys whose primary responsibilities include litigation before state agencies including the Illinois Labor Relations Board and state and federal courts; contract negotiations with public employers; and arbitration of contract disputes; four Business Agents who represent employees in resolving day-to-day disputes, assisting employees in resolving grievances, and responding to employer requests (*id.*); and at least two clerical employees (*id.*). These staff members report to Sweeney as well as two other Officers of the Union working out of the Countryside Union Hall (*id.*).

The total cost of Local 150's Public Sector Department in 2018 was $5,083,445.00 (Facts ¶ 12). This includes employees' salaries and benefits; prorated costs of office space, utilities, and other charges; and automobiles used by staff to service the public employee bargaining units (*id.*).

4

Throughout the time Local 150 has represented public employees in Illinois, it has negotiated union security clauses into the collective bargaining agreements with public employers which include "fair share" provisions (Facts ¶ 13).  Those provisions typically read (*id*.):

**SECTION 18.2**        **Fair Share**

Any present employee who is not a member of Local Union #150 shall, as a condition of employment, be required to pay a Fair Share (not to exceed the amount of Union dues) of the cost of the collective bargaining process, contract administration in pursuing matters affecting wages, hours, and other conditions of employment, but not to exceed the amount of dues uniformly required by members. All employees hired on or after the effective date of this Agreement and who have not made application for membership shall, on or after the thirtieth (30th) day of their employment, also be required to pay a Fair Share as defined above.

Since the decision by the Supreme Court last year in *Janus*), approximately 30 public employees represented by Local 150 have resigned their membership in the Union and/or ceased paying fair share fees formerly required of them under state law which is now determined to be unconstitutional (Facts ¶ 14).  Full dues and fees paid by public sector members to Local 150 averaged $1,680.00 for the year of 2018 (Facts ¶ 17).  The dues or fair share fees lost to Local 150 easily exceed $50,000.00 per year (*id.*).  Nevertheless, despite this loss of revenue, Local 150's staff has remained unchanged and its costs have incrementally increased (*id.*).

Resignation letters received by President-Business Manager James M. Sweeney's office from public employees represented by Local 150 include, in part, the request that the Union "immediately cease deducting all dues, fees, and political contributions from my wages, as is my constitutional right in light of the U.S. Supreme Court's ruling in *Janus v. AFSCME*." (Facts ¶ 19). These letters also include the demand that despite their refusal to pay "all dues, fees, and political contributions," "the union must continue to represent me fairly and without discrimination in dealings with my employer and cannot, under any circumstances, deny me any wages, benefits, or protections provided under the collective bargaining agreement with my employer." (*id.*).

5

Local 150 objects to the compelled representation imposed upon it by Illinois law in processing grievances for nonmembers who refuse to pay full dues or fair share fees (Facts ¶ 20). The Union's members are now required to subsidize speech on behalf of nonmembers and associate with them in violation of their First Amendment rights. After *Janus*, the provisions of the IPLRA compelling Local 150 and its members to process grievances for nonmembers are unconstitutional.

## Argument

This case presents an issue that is the mirror image of *Janus*: Whether the Union and its individual dues-paying members can be compelled by the State to subsidize the speech of nonmembers and/or associate with them? The holding in *Janus* is therefore controlling (138 S.Ct. at 2459-2460):

> [The Illinois law which] forced [public employees] to subsidize a union, even if they chose not to join and strongly object to the positions the union takes in collective bargaining and related activities…violates the free speech rights of non-members by compelling them to subsidize private speech on matters of substantial public concern.

Therefore, that same Illinois law which compels Local 150 and its members over their objections to subsidize the speech of nonmembers and associate with them in processing grievances and representing them in arbitrations is likewise unconstitutional.

The principle upon which the Supreme Court based its holding in *Janus* is fundamental. The First Amendment rights to speak and associate include the concomitant rights not to do so. *Janus*, 138 S.Ct. at 2463, *relying on Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all"); *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association…plainly presupposes a freedom not to associate").

The State of Illinois compels Local 150 and its members to speak for nonmembers and to associate with them. The IPLRA adopts the common labor relations regime of "exclusive representation." 5 ILCS 315/6(d) (Facts ¶ 6). So long as the union represents a majority of the employees in any given bargaining unit, the employees in the minority cannot represent themselves or choose another agent without first displacing the original. See, e.g., *Stahulak v. City of Chicago*, 184 Ill. 2d 176, 184 (1998) ("In exchange for benefits provided by collective bargaining agreement, [employee] gave up his individual right to bargain with the City"). But in order to protect the rights of the minority, the IPLRA adopts the duty of fair representation. 5 ILCS 315/10(b)(i)(ii). The exclusive bargaining representative cannot discriminate against nonmembers, and must represent them fairly, honestly, and in good faith. 5 ILCS 315/6(d), 10(b)(1)(ii); *Metro. All. of Police v. State Labor Relations Bd., Local Panel*, 345 Ill. App. 3d 579, 587 (1st Dist. 2003), *c.f.*, *Vaca v. Sipes*, 386 U.S. 171, 190 (1967) (a breach of the duty of fair representation occurs only when a union's conduct towards a bargaining unit member is "arbitrary, discriminatory, or in bad faith"), *Steele v. Louisville Railroad*, 323 U.S. 192 (1944) (under the Railway Labor Act, 45 U.S.C. § 151 et seq., exclusive representative of employees has duty to represent all bargaining unit members "without hostile discrimination, fairly, impartially and in good faith").

The same section of the IPLRA which requires a union to represent fairly all employees in the bargaining unit allows unions to negotiate provisions requiring payment of fair share fees which it can charge nonmembers for the cost of representation as a condition of employment. 5 ILCS 315/5(d)(e). Under this fair share structure, each employee in the bargaining unit is paying his or her equal share of the cost of representation, and no employee is forced to subsidize the representation of another employee. The proximity of these two subsections, and the legislative history, shows the obligations of fair representation and fair payment of fees were mutual.

Now that collective bargaining and contract administration are protected by the First Amendment, but nonmembers need not pay for those services, the Union and its members have the right not to subsidize the speech of nonmembers and need not association with them. To the extent Illinois law compels Local 150 and its members to represent nonmembers, the statutory duty of fair representation is unconstitutional.

**A.      After *Janus*, the IPLRA Violates Local 150's Rights Under the First Amendment**

First, the IPLRA's duty of fair representation requirement violates union members' and unions' First Amendment rights by compelling them to subsidize the speech of nonmembers. Second, the duty of fair representation compels union members to associate with nonmembers. Each of these injuries is caused by the text of the IPLRA now rendered unconstitutional by *Janus*.

The rights of individual employees to organize unions have long been considered "fundamental," *Jones & Laughlin Steel, Inc. v. NLRB*, 301 U.S. 1, 33 (1937) ("the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer…is a fundamental right."). As the Supreme Court explained in *Thomas v. Collins*, 323 U.S. 516, 532 (1995):

> Free discussion concerning the condition in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society…The right thus to discuss, and inform people concerning, the advantages and disadvantages of union and joining them is protected not only as a part of free speech, but as part of free assembly.

It is well settled that unions have free speech rights protected by the First Amendment. *Knox v. SEIU Local 1000*, 567 U.S. 298, 321-322 (2012), *relying on Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010). It is now clear that union members and nonmembers need not

associate with each other, *Janus*, 138 S.Ct. at 2463-2464; nor can they be compelled to support each other's speech. *Id.*

In *Janus*, the U.S. Supreme Court held that a union's representation of a public sector bargaining unit was speech. *Janus*, 138 S.Ct. at 2464. The Court then held that a "fair share scheme" compelling a nonmember to subsidize the speech of the union violated the First Amendment. *Id.* "In simple terms," the Court explained, "the First Amendment does not permit the government to compel a person to pay for another's speech just because the government thinks that speech furthers the interests of the person who does not want to pay." *Id.* at 2467.

Following the *Janus* decision, the cost of the Union's representation shifted from each employee in the bargaining unit to only the union members in the bargaining unit. By statutorily requiring the Union to represent nonmembers via Section 10(b)(1)(ii) of the IPLRA, the members and/or union are now forced to subsidize the speech of the nonmembers in the bargaining unit. The alternative is to reduce services as revenues decline. But this too violates the rights of the Union and its members by burdening their speech. As stated in *Janus*, "Compelling a person to subsidize the speech of other private speakers raises…First Amendment concerns" similar to forcing them to "voice ideas with which they disagree," and "cannot be casually allowed." 138 S.Ct. at 2464-2465 (emphasis added). Hence, the *Janus* Court found, "the Illinois scheme cannot survive under even the more permissive standard applied" to commercial speech—"exacting scrutiny." *Id.* at 2465.

Section 10(b)(1) of the IPLRA requires unions to represent nonmembers during collective bargaining and throughout the grievance procedure. 5 ILCS 315/10(b)(1)(ii); *see also Cintron v. AFSCME, Council 31,* No. S-CB-16-032, p. 1, 34 PERI ¶ 105 (ILRB Dec. 13, 2017) (union may not intentionally direct "animosity" toward nonmembers based on their "dissident union

practices"). This same Section of the IPLRA also allowed unions to charge nonmembers for the cost of union representation. 5 ILCS 315/10(b)(1)(ii).

In *Janus*, the Court reaffirmed that "[t]he right to eschew association for expressive purposes is likewise protected" by the First Amendment. 138 S. Ct. at 2463; *see also Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.*, 475 U.S. 1, 9 (1986) ("forced associations that burden protected speech are impermissible"). The Court held that the First Amendment prohibits states from compelling nonmembers to associate with unions by paying fair share fees. 138 S.Ct. at 2463-2468. Accordingly, it necessarily follows that unions and union members have the right under the First Amendment to refuse to associate with free-riding nonmembers. These free-riders increase the financial burden on dues-paying members and adversely affect the members ability to pursue collective efforts.

However, the First Amendment right of Local 150 and its members to eschew association currently is prevented by Section 10(b)(1) of the IPLRA. Local 150 fully intends to honor its obligations as the exclusive representative of the employees it represents in negotiating contracts which apply equally to everyone (Facts ¶ 22). The Union has represented nonmembers in arbitration proceedings in the past and will continue to do so as is required by law (*id.*). Under current law, Local 150 would violate the IPLRA by refusing to represent a nonmember employee based on that employee's membership status. If Section 10(b)(1)(ii) of the IPLRA were struck down as unconstitutional, Local 150 and its members would be permitted to exercise freely their right to associate without the consequence of being penalized for violating the IPLRA.

The *Janus* decision made clear that collective bargaining is speech and representation by a union is an associational right, and both are protected by the First Amendment. 138 S.Ct. at 2475-2477. However, Section 10(b)(1)(ii) of the IPLRA as written, compels Union Plaintiffs to speak

on behalf of and associate with nonmembers. Local 150 asks this Court to consider the legal question of whether the Union and its members have the same First Amendment rights as *Janus* granted to nonmembers. If this Court agrees, the appropriate remedy is to strike down Section 10(b)(1)(ii) of the IPLRA as unconstitutional to the extent it requires the Union to represent nonmembers in disciplinary proceedings.

**B.      After Janus, Unions Can Require Nonmembers to Pay for Services or Deny Them Representation**

In *Janus*, the Supreme Court recognized that unions have alterative means "significantly less restrictive of associational freedoms" than the imposition of agency fees in the representation of nonmembers in disciplinary matters. 138 S.Ct. at 2468. Ordinarily, "the union is required by law to provide fair representation for all employees in the unit, members and non-members alike." *Id.* at 2460. The Court recognized, however, that "as a practical matter" when a union controls the grievance process, "it may…effectively subordinate 'the interests of [an] individual employee…to the collective interests of all employees in the bargaining unit.'" *Id.* at 2468, *quoting Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 58 n.19 (1974); *citing with approval Mahoney v. Chicago*, 293 Ill.App. 3d 69, 73-74 (1997) (union has discretion to refuse to process a grievance provided it does not act arbitrarily or in bad faith (internal quotations omitted)). *Id.* Hence, the Court concluded (*id.* at 2468-2469) (internal citation omitted):

> In any event, whatever unwanted burden is imposed by the representation of nonmembers in disciplinary matters can be eliminated "through means significantly less restrictive of associational freedoms" than the imposition of agency fees… Individual nonmembers could be required to pay for that service or could be denied union representation altogether.

The arbitration of individual employee disciplinary grievances can be an expensive enterprise (Facts ¶ 18). Such cases can routinely exceed $5,000 in out of pocket costs alone (*id.*). Local 150 has arbitrated such grievances in the past and will continue to do so as is required by

law (Facts ¶ 22). It is fundamentally unfair, however, for the Union and its members to subsidize nonmembers in resolving their individual disputes. To be compelled to do so under penalty of an unfair labor practice proceeding – to speak for and associate with – nonmembers in an arbitration proceeding violates the First Amendment rights of the Union and its members. The Supreme Court's suggested alternative is an appropriate way to avoid the Constitutional problem presented by the IPLRA's duty of fair representation provisions. Now that the fair share fee component of the statute has been eliminated, the concomitant obligation of fair representation of nonmembers - at least with respect to grievance processing for free - should likewise fall.

## Conclusion

For all the above reasons, the Court should grant Local 150's Motion for Summary Judgment.

Dated: July 18, 2019

Respectfully submitted,

By: /s/ Dale D. Pierson
One of the Attorneys for Plaintiffs

Attorneys for Plaintiffs:
Dale D. Pierson (dpierson@local150.org)
Kenneth Edwards (kedwards@local150.org)
Elizabeth A. LaRose (elarose@local150.org)
Robert A. Paszta (rpaszta@local150.org)
James Connolly, Jr. (jconnolly@local150.org)
Local 150 Legal Department
6140 Joliet Road
Countryside, IL 60525
Ph. 708/579-6663; Fx. 708/588-1647

Marc R. Poulos (mpoulos@iiiffc.org)
Kara M. Principe (kprincipe@iiiffc.org)
Joseph Sweeney (jsweeney@iiiffc.org)
Indiana, Illinois, Iowa Foundation
for Fair Contracting
6170 Joliet Road
Countryside, IL 60525
Ph. 815/254-3332; Fx. 815/254-3525

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record, hereby certifies that on July 18, 2019, he electronically filed the foregoing with the Clerk of Court using the CM/CM/ECF system which sent notification to the following:

Thomas A. Ioppolo *(tioppolo@atg.state.il.us)*
Illinois Attorney General's Office
100 West Randolph Street, 13th Floor
Chicago, IL 60601
Ph. 312/814-7198

By: /s/ Dale D. Pierson
One of the Attorneys for Plaintiffs

Attorneys for Plaintiffs:

Dale D. Pierson *(dpierson@local150.org)*
Kenneth Edwards *(kedwards@local150.org)*
Elizabeth A. LaRose *(elarose@local150.org)*
Robert A. Paszta *(rpaszta@local150.org)*
James Connolly, Jr. *(jconnolly@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL 60525
Ph. 708/579-6663; Fx. 708/588-1647

Marc R. Poulos *(mpoulos@iiiffc.org)*
Kara M. Principe *(kprincipe@iiiffc.org)*
Joseph Sweeney *(jsweeney@iiiffc.org)*
Indiana, Illinois, Iowa Foundation
for Fair Contracting
6170 Joliet Road
Countryside, IL 60525
Ph. 815/254-3332; Fx. 815/254-3525