# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES M. SWEENEY, et. al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 18-cv-1362 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| KWAME RAOUL, in his official capacity as ) | |
| Attorney General for the State of Illinois, et al., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs James M. Sweeney and the International Union of Operating Engineers, Local 150, AFL-CIO (collectively "Local 150") bring this lawsuit against defendants Attorney General of Illinois Kwame Raoul and Executive Director of the Illinois Labor Relations Board ("ILRB") Kimberly Stevens, alleging that part of the Illinois Public Labor Relations Act ("IPLRA") violates their First Amendment rights in light of the Supreme Court's ruling in *Janus v. AFSCME, Council 31*, ___ U.S. ___, 138 S.Ct. 2448, 201 L.E.2d 924 (2018). The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the reasons explained below, the Court grants defendants' motion and denies plaintiffs' motion.

**Background**

The IPLRA is a set of administrative laws under which the ILRB regulates labor relations between public employers and employees in Illinois. Under the IPLRA, if the majority of the employees in a bargaining unit vote to be represented by a union, the ILRB designates that union as the exclusive representative for collective bargaining purposes. *See* 5 ILCS 315/6(c). In exchange for conferring this exclusivity, the IPLRA requires that public unions must represent all public employees in a bargaining unit, including those who are not union members. *See* 5 ILCS 315/6(d).

Before *Janus*, the IPLRA authorized public sector unions to charge non-union members agency fees reflecting a proportionate share of union dues. *See* 5 ILCS 315/6(e).

Local 150 is a labor organization representing certain Illinois public sector employees. More specifically, Local 150 has organized and represented employees in public works, sewer and water, parks, and other departments in Illinois municipalities and governmental units. Currently, Local 150 represents approximately 3,300 employees in about 133 bargaining units. Sweeney is the President-Business Manager of Local 150 and a member of the union.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties' summary judgment motions present only questions of law.

**Discussion**

In *Janus*, the Supreme Court held that compulsory fair-share or agency fee arrangements under the IPLRA violated the First Amendment "free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern." *Id.* at 2460. Local 150 now argues that after *Janus*, the designation of Illinois public employee unions as the exclusive representative for a bargaining unit, and the concomitant duty of Illinois unions to represent nonmembers fairly, is also unconstitutional under the First Amendment. Specifically, Local 150 argues that the reasoning in *Janus* allows unions to refuse to represent non-union members because "unions and union members have the right under the First Amendment to refuse to associate with free-riding nonmembers. These free-riders increase the financial burden on dues-paying members and adversely affect the members ability to pursue collective efforts." In making this argument,

Local 150 asks the Court to read *Janus* too broadly and ignore recent Seventh Circuit precedent.

At issue in *Janus* was the IPLRA's agency-fee scheme charging non-union employees dues—not a union's exclusive representation under the IPLRA. In discussing agency fees, the *Janus* Court noted that the "designation of a union as the exclusive representative of all the employees in a unit and the exaction of agency fees" are not "inextricably linked." *Id.* at 2465 (citing *Harris* v. *Quinn*, 573 U.S. 616, 649, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014)). The *Janus* Court further elaborated:

> [T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general…. "[T]he State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views.

*Id.* at 2478 (citations and quotation marks omitted). Based on this passage, the Ninth Circuit has concluded that "*Janus* is also clear that the degree of First Amendment infringement inherent in mandatory union representation is tolerated in the context of public sector labor schemes." *Mentele v. Inslee*, 916 F.3d 783, 789 (9th Cir. 2019); *see also Janus*, 138 U.S. at 2485 n.27 ("States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions.").

Meanwhile, on remand from the Supreme Court, Mark Janus sought damages in the amount of the fair-share or agency fees he paid to his union prior to the Supreme Court's *Janus* decision. In affirming the district court and rejecting this request, the Seventh Circuit thoroughly analyzed the Supreme Court's *Janus* holding and concluded that "the only right the *Janus*[] decision recognized is that of an objector not to pay *any* union fees." *Janus v. AFSCME, Council 31*, ___ F.3d ___, 2019 WL 5704367, at *4 (7th Cir. Nov. 9, 2019) (emphasis in original). In coming to this conclusion, the Seventh Circuit noted that after *Janus*, "even with payments of zero from objectors, the union still

3

enjoys the power and attendant privileges of being the exclusive representative of an employee unit." *Id.* When discussing the principles behind exclusive union representation, the Seventh Circuit noted that "[u]nions designated as exclusive representatives were (and still are) obligated to represent all employees, union members or not, 'fairly, equitably, and in good faith.'" *Id.* at *1 (citation omitted).

Because *Janus* did not change a union's exclusive representation obligations under the IPLRA, the Court is left with controlling Supreme Court precedent enunciated in *Minnesota State Bd. for Cmty. Coll. v. Knight*, 465 U.S. 271, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984), which *Janus* did not overrule. *See Bierman v. Dayton*, 900 F.3d 570, 574 (8th Cir. 2018) (The *Janus* "decision never mentioned *Knight*, and the constitutionality of exclusive representation standing alone was not at issue."). In *Knight*, the Supreme Court held that Minnesota's system of exclusive union representation did not violate First Amendment speech or associational rights of non-union members. *Id.* at 288. Based on *Knit*, the Seventh Circuit has concluded "the IPLRA's exclusive-bargaining-representative scheme is constitutionally firm and not subject to heightened scrutiny." *Hill v. Service Employees Int'l Union*, 850 F.3d 861, 864 (7th Cir. 2017). *Knight* directly controls Local 150's arguments and is still binding upon the lower courts until the Supreme Court overrules it. *See, e.g., Price v. City of Chicago*, 915 F.3d 1107, 1111 (7th Cir. 2019) (citing *Agostini v. Felton*, 521 U.S. 203, 237–38, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)).

Last, Local 150's argument that it has First Amendment rights not to be compelled to support non-members' speech based on the history and development of American labor relations is not persuasive, especially in light of the Seventh Circuit's recent discussion of the principles underlying exclusive union representation in *Janus*. *See Janus*, 2019 WL 5704367, at *1. As to Local 150's free rider arguments, *Janus* itself concluded that "avoiding free riders is not a compelling interest." *Id.* at 2466; *see also Janus*, 2019 WL 5704367, at *4 ("The Court's analysis focused on the

union rather than the nonmembers: the question was whether requiring a union to continue to represent those who do not pay even a fair-share fee would be sufficiently inequitable to establish a compelling interest, not whether requiring nonmembers to contribute to the unions would be inequitable."). Therefore, Local 150's argument that Illinois' exclusive-bargaining-representative scheme is unconstitutional under *Janus* fails.

**Conclusion**

Based on the foregoing, the Court grants defendants' summary judgment motion [68] and denies plaintiffs' summary judgment motion [66]. Plaintiffs' third amended complaint is dismissed with prejudice. Civil case terminated.

IT IS SO ORDERED.
Date: 11/12/2019              Entered: _____
                              SHARON JOHNSON COLEMAN
                              United States District Court Judge